UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FULL CIRCLE UNITED, LLC,<br><br>  *Plaintiff*,<br> v.<br><br>BAY TEK ENTERTAINMENT, INC.,<br><br>  *Defendant*. | Case No. 1:21-mc-00866<br><br>CASE IN OTHER COURT: No. 1:20-cv-03395-BMC (E.D.N.Y.) |
| BAY TEK ENTERTAINMENT, INC.,<br><br>  *Counterclaim Plaintiff*,<br> v.<br><br>FULL CIRCLE UNITED, LLC,<br><br>  *Counterclaim Defendant*,<br><br> and<br><br>ERIC PAVONY,<br><br>  *Additional Counterclaim Defendant*. | |

**MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE TO COMPEL
HOWARD PAVONY TO COMPLY WITH SUBPOENA *DECUS TECUM***

13838786.2

Defendant/Counterclaim Plaintiff Bay Tek Entertainment, Inc. ("Bay Tek") respectfully submits this Memorandum of Law in support of its order to show cause pursuant to Fed. R. Civ. P. 45 to compel Howard Pavony to comply with the subpoena *duces tecum* (the "Subpoena")[1] served on him on November 5, 2021 (the "OTSC").  A copy of the Subpoena is submitted herewith as Lichtman Decl. Ex. A.

## PRELIMINARY STATEMENT

Bay Tek is forced to bring this emergency application because Howard Pavony—the father of one of the Counterclaim Defendants and a key witness in this case—has utterly ignored the Subpoena served on him, and Counterclaim Defendants are stonewalling and sticking their heads in the sand, despite their close relation to this witness.   The parties are about to take depositions, and, as set forth below, Howard Pavony plays a crucial role in his son's business.  Bay Tek served him with a Subpoena consisting of limited, targeted document requests intended to seek relevant information—information that may become important in the very depositions that the parties are on the heels of taking.  Howard Pavony was required to comply over a month ago, yet, to date, has willfully defaulted and completely ignored the Subpoena.  Accordingly, Bay Tek requests an order to show cause why Howard Pavony should not comply with the Subpoena by January 10, 2022 and pay Bay Tek its reasonable expenses, including attorney's fees, caused by his failure to comply.[2]

---

[1] A copy of the Subpoena is submitted herewith as Lichtman Decl. Ex. A.

[2] Though this litigation sits in and the Subpoena was issued through the Eastern District of New York (the "Issuing Court"), Bay Tek is filing the proposed OTSC in this forum in an abundance of caution, given that the Subpoena ordered that documents be produced in Manhattan.  *See, e.g., JMC Rest. Holdings, LLC v. Pevida*, 2015 WL 2240492, at *1 (E.D.N.Y. May 12, 2015) (ordering that the Southern District of New York was the court of compliance in connection with a Rule 45 subpoena seeking production of documents in Manhattan).

13838786.2

## BACKGROUND

### A.     Facts Relevant to the Motion

This litigation, which is currently pending in the Eastern District of New York, captioned *Full Circle United, LLC v. Bay Tek Entm't, Inc.*, No. 1:20-cv-03395, concerns Plaintiff/Counterclaim Defendant Full Circle United LLC's ("Full Circle") limited license to use the Skee-Ball® trademark (the "Mark") in connection with live leagues and competitions ("Live Play") held on Skee-Ball®-branded alley rollers manufactured by Skee-Ball, Inc. ("SBI"). The license agreement was entered into with SBI on July 17, 2014 (the "License Agreement"), as part of the settlement and resolution of prior litigation between SBI and Full Circle, after SBI sued Full Circle in 2011 for improperly using the Mark without authorization (the "Prior Lawsuits"). Defendant/Counterclaim Plaintiff Bay Tek, an arcade game manufacturer based in Wisconsin, is the owner and current licensor of the Mark to Full Circle under the License Agreement, by way of its acquisition of SBI's assets and assignment of the License Agreement in 2016.

Full Circle is dissatisfied with the limited scope of its license rights and seeks instead to use the Mark without constraint for a new and untested venture known as the "National Skee-Ball League" ("NSBL"), including in connection with broadcast rights that it was never granted under the License Agreement, and in connection with new and expensive, customized alley roller machines bearing the Mark (the "Skee-Ball Live Lanes"), which neither Bay Tek, SBI, nor any other company had or has an obligation to manufacture. Full Circle brought this breach-of-contract lawsuit as part of its improper campaign to pressure Bay Tek into agreeing to enlarge Full Circle's rights in the Mark and finance the Skee-Ball Live Lanes.

In discovery, Bay Tek learned of Howard Pavony's significant involvement in this case, including his direct involvement in Full Circle's business, use of the Mark, negotiation and

execution of the License Agreement, and growth of the NSBL concept. Howard Pavony is a resident of Westchester County (he resides, is employed, and transacts business within 100 miles of both this Court and the Issuing Court), and a successful businessman, having held executive-level roles at various technology companies in the New York area. He is also the father of Eric Pavony, the sole member of Full Circle and other Counterclaim Defendant named in this case.[3]

Documents produced by Full Circle demonstrate that Howard Pavony helped his son conceive of the NSBL brand prior to Full Circle holding any rights in the Mark, and, to that end, Howard Pavony extensively discussed deal terms on behalf of Full Circle to license the Mark from SBI, even exploring a potential acquisition of SBI's assets, before SBI ultimately sold its assets to Bay Tek in 2016. After the Prior Lawsuits were initiated, Howard Pavony was central in negotiating the Licensing Agreement at issue in the present litigation. Confirming his involvement, Full Circle has even listed Howard Pavony as a sender, recipient, and/or copyee on numerous categories of purportedly privileged communications on its privilege log. Lichtman Decl. Ex. B.[4] Furthermore, Bay Tek has reason to believe that Howard Pavony may have a pecuniary interest in its outcome, given his pivotal role advising Full Circle and Eric Pavony and negotiating on their behalf with respect to the License Agreement and Full Circle's rights thereto. Howard Pavony is thus central to this lawsuit, and is likely to possess unique and critically relevant information concerning, *inter alia*, Eric Pavony and Full Circle's

---

[3] Though Full Circle is nominally the plaintiff in this action, it has flagrantly breached its own obligations under the License Agreement and Full Circle and Eric Pavony, have wrongfully infringed and diluted the Mark, including *inter alia* by conducting unauthorized broadcasts, tarnishing the Mark through vulgar slogans, and associating the Mark with excessive alcohol and drug use. As such, Bay Tek brought counterclaims against Full Circle and Eric Pavony for breach of the License Agreement, trademark infringement and dilution, and unfair competition.

[4] Bay Tek submits that this is wholly improper and is properly raising these issues in the Eastern District of New York.

understanding of the terms of the License Agreement and the scope of their licensed rights in the Mark, and Full Circle's motivation for initiating the present lawsuit.

B. **Procedural History**

The case was initiated on July 28, 2020. Following the initial case management conference, the Issuing Court entered a scheduling order on September 10, 2020 (ECF No. 23) ("the Scheduling Order"), which set the fact discovery cut-off as June 11, 2021. That discovery deadline was subsequently extended, and the current discovery cut-off is January 31, 2022. The Issuing Court appointed Justice Shirley Kornreich (ret.) to supervise discovery as Special Master on June 14, 2021 pursuant to Fed. R. Civ. P. 53 following the first discovery extension.[5]

Though the original Scheduling Order contained an April 12, 2021 cut-off for serving third-party discovery, on October 29, 2021 the Special Master granted the parties limited extensions to serve subpoenas with respect to certain non-party witnesses. One of those non-party witnesses, on which Bay Tek was granted the right to serve a subpoena, was Howard Pavony. Lichtman Decl. Ex. C, at 53:21-54:14 (Oct. 29 Hearing Transcript).

Pursuant to the Special Master's October 29, 2021 order, Bay Tek served the Subpoena on Howard Pavony on November 5, 2021. Lichtman Decl. Ex. D (Certificate of Service). The Subpoena demanded that Mr. Pavony produce documents within 100 miles of his residence, at Bay Tek's counsel's offices in Manhattan, by November 22, 2021. The requests were limited and targeted, aimed at understanding, among other things, Mr. Pavony's role advising Full Circle, his dealings related to the Mark, his involvement with NSBL, any pecuniary interest he may hold in Full Circle, and his communications concerning Bay Tek. Lichtman Decl. Ex. A.

---

[5] Justice Kornreich served as a New York state trial court judge for over two decades, sitting on the Commercial Division of the Supreme Court, New York County.

4

Howard Pavony did not comply with the Subpoena by the November 22, 2021 deadline set forth therein. In fact, Howard Pavony never responded to the Subpoena at all and is currently in default, in blatant and willful defiance of his obligations under Fed. R. Civ. P. 45. On December 8, 2021, Bay Tek's counsel apprised Full Circle's counsel of Mr. Pavony's default, and asked whether they represented Howard Pavony (given that they represent his son), and, if not, to advise Bay Tek's counsel of who represented him. Full Circle's counsel simply stated that they do not represent Howard Pavony, and did not otherwise identify counsel for him.

Pursuant to the Issuing Court's rules and the Special Master's appointment to oversee all discovery issues in this litigation, Bay Tek raised Howard Pavony's failure to comply at a discovery conference on December 28, 2021, and again, requested that Full Circle's counsel ask him to comply with the Subpoena. Again, Full Circle simply denied that it represented Howard Pavony, or had any control whatsoever over Mr. Pavony, despite his obvious close relation to the Counterclaim Defendants. Accordingly, the Special Master instructed Bay Tek to seek with the appropriate court an order to compel Howard Pavony's compliance with the Subpoena.

## ARGUMENT

**I.      HOWARD PAVONY FAILED TO RESPOND TO A PROPERLY SERVED SUBPOENA**

Pursuant to Fed. R. Civ. P. 45(b), service is made by "delivering a copy to the named person." This does not literally require personal delivery however. Rather, courts in this Circuit have repeatedly explained that "delivery" under Rule 45 "requires only delivery which reasonably ensures actual receipt by the witness." *Beare v. Millington*, 2010 WL 234771, at *4 (E.D.N.Y. Jan. 13, 2010) (citing cases). Delivery via the methods for service of summons set forth under Fed. R. Civ. P. 4(e) (which incorporates New York's procedural rules), has routinely been held to be sufficient. *See, e.g., Plaza Motors of Brooklyn, Inc. v. Rivera*, 2021 WL

4356011, at *3 (E.D.N.Y. Sept. 24, 2021) (holding that plaintiff properly served Rule 45 subpoena by complying with the rules governing service of process under Fed. R. Civ. P. 4); *Sheet Metal Workers' Nat'l Pension Fund v. Rhb Installations*, 2016 WL 128153, at *2 (E.D.N.Y. Jan. 12, 2016) (holding that leaving copy of subpoena with wife and sending by first class mail was sufficient); *Ultradent Prod., Inc. v. Hayman*, 2002 WL 31119425, at *2 (S.D.N.Y. Sept. 24, 2002) ("[A]ny means of service in accordance with New York procedural law should be sufficient to satisfy Rule 45 requirements."); *King v. Crown Plastering Corp.*, 170 F.R.D. 355, 356 (E.D.N.Y. 1997)(holding that service of subpoena pursuant to N.Y. C.P.L.R. § 308(2), which allows for "service by delivery to a person of suitable age and discretion at the residential address coupled with mailing to the residential address," satisfied the service requirement under Rule 45).

Here, service of the Subpoena on Howard Pavony was completed pursuant to approved service methods under federal and state law.  First, on November 5, 2021, the process server delivered a copy to Mr. Pavony's "usual place of abode with someone of suitable age and discretion who resides there." *See* Fed. R. Civ. P. 4(e)(2).  In particular, the copy was left at Howard Pavony's Westchester county residence with Libby Pavony, who identified herself as Mr. Pavony's wife.  Lichtman Decl. Ex. C.  This constitutes proper service under Rule 4(e)(2). *See, e.g. Philippe Nyc I LLC v. Philippe W. Coast, LLC*, 2016 WL 1183669, at *5 (S.D.N.Y. Mar. 24, 2016); *Freeman v. Tuan Anh Nguyen*, 2014 WL 4628766, at *5 (E.D.N.Y. May 20, 2014); *DePasquale v. DePasquale*, 2013 WL 789209, at *5 (E.D.N.Y. Mar. 1, 2013), *aff'd*, 568 F. App'x 55 (2d Cir. 2014), *aff'd*, 568 F. App'x 55 (2d Cir. 2014).  Second, on November 8, 2021, the process server mailed a copy of the Subpoena via first class mail to Howard Pavony's Westchester county residence—his "last-known residence"—in a postpaid envelope bearing the

words "Personal & Confidential." *See* N.Y. C.P.L.R. § 308(2); Lichtman Decl. Ex. C. The combined delivery of the Subpoena on Mr. Pavony's wife and mailing of the Subpoena three days later complies with N.Y. C.P.L.R. § 308(2), and therefore Fed. R. Civ. P. 4(e)(1), which incorporates state law for service of summons. *See, e.g., Strike 3 Holdings, LLC v. Doe*, 2021 WL 4896862, at *1 n.2 (E.D.N.Y. Sept. 20, 2021), *report and recommendation adopted*, 2021 WL 4894161 (E.D.N.Y. Oct. 20, 2021) *Tuqui Tuqui Dominicana, S.R.L. v. Castillo*, 2020 WL 1689763, at *4 (S.D.N.Y. Apr. 7, 2020); *King*, 170 F.R.D. at 356.[6]

Howard Pavony has thus been served pursuant to the methods that are reasonably calculated to provide adequate notice—methods that are explicitly approved under both the Federal rules and New York procedural rules as safeguarding a parties' due process rights. He has therefore been properly served with the Subpoena.[7]

## II. HOWARD PAVONY SHOULD BE ORDERED TO COMPLY BY JANUARY 10, 2021

Because Howard Pavony has defied his obligations, he should be ordered to show cause why he should not comply with the Subpoena and produce the documents requested therein no later than January 10, 2021. The parties are in the midst of preparing for depositions, and the documents may be crucial to those depositions, because, as explained above, Howard Pavony has

---

[6] Though N.Y. C.P.L.R. § 308(2) notes that service is "complete" ten days after filing proof of service, the Second Circuit has explained that this requirement has "no bearing on calculating the time in which to answer in federal practice." *Beller & Keller v. Tyler*, 120 F.3d 21, 26 (2d Cir. 1997) (holding that defendant's time to answer complaint ran from the time service was actually carried out, and that the proof of service requirement under New York procedural rules did not factor into that calculation). Here, service under C.P.L.R. § 308(2), and the time to respond to the Subpoena, would be calculated from November 8, 2021, the date of the subsequent first-class mailing. However, it is ultimately immaterial whether service was completed on November 5 or November 8, as Howard Pavony has failed to timely respond regardless.

[7] Howard Pavony is also the father of Eric Pavony as mentioned. Eric Pavony and his counsel are well aware of the Subpoena, but choose not to cooperate, thereby forcing Bay Tek to file this OTSC.

played a pivotal role in the facts underlying this lawsuit, including in negotiating the very License Agreement at issue. Moreover, he did not serve objections to the requests set forth in the Subpoena within the time specified for compliance (indeed, he has not served any objections at all), and has thus waived his objections. *See* Fed. R. Civ. P. 45(d)(2)(B) (objections must be served the earlier of the time specified for compliance or 14 days after the subpoena is served); *Erie Cnty. Dist. Atty's Office v. Gugino*, 2021 WL 4172876, at *2 (W.D.N.Y. Sept. 14, 2021) ("Failure to serve objections to a Rule 45 subpoena within 14 days following service of the subpoena as required by Fed. R. Civ. P. 45(d)(2)(B), results in waiver of such objection."); *Sheet Metal Workers' Nat'l Pension Fund v. Amodeo*, 2016 WL 3080807, at *6 (E.D.N.Y. May 27, 2016) ("[t]he fourteen day time limitation to serve written objections to a subpoena is crucial as failure to do so typically constitutes a waiver of such objections.") (citing *In re Corso*, 328 B.R. 375, 384 (E.D.N.Y. 2005)).

In the interest of avoiding further delay and to minimize the risk of any witness having to sit more than once for a deposition, such an order is warranted. *See, e.g., S.E.C. v. Sassano*, 274 F.R.D. 495, 497 (S.D.N.Y. 2011) (granting motion to compel compliance with subpoena *duces tecum*); *Ultradent*, 2002 WL 31119425, at *4 (same).

### III. BAY TEK IS ENTITLED TO THEIR REASONABLE COSTS AND ATTORNEY'S FEES CAUSED BY HOWARD PAVONY'S FAILURE TO COMPLY WITH THE SUBPOENA

Given Howard Pavony's willful failure to comply with the Subpoena, including his failure to even provide timely objections, Mr. Pavony should be ordered to show cause why he should not pay Bay Tek its attorney's fees caused by his failure to comply. *See, e.g.,* Fed. R. Civ. P. 45(g); *Jalayer v. Stigliano*, 2016 WL 5477600, at *2 (E.D.N.Y. Sept. 29, 2016) ("[T]he Court has the power under this rule to impose contempt simply on the basis of failure to comply with a subpoena.") (citing cases); *Trustees of Conn. Pipe Trades Local 777 Health Fund v.*

*Plumbing Creations, LLC*, 2019 WL 3051293, at *4 (D. Conn. July 10, 2019) (imposing fine and ordering payment of fees and costs due to willful noncompliance with subpoena).

## CONCLUSION

For the foregoing reasons, Bay Tek respectfully requests that this Court grant the relief requested herein.

DATED: New York, New York
December 29, 2021

Respectfully submitted,

Mitchell Silberberg & Knupp LLP

By: /s/ Jeffrey M. Movit
Christine Lepera
Jeffrey M. Movit
Leo M. Lichtman
437 Madison Ave., 25th Floor
New York, New York 10022-7001
Telephone: (212) 509-3900
Facsimile: (212) 509-7239
Email: ctl@msk.com
Email: jmm@msk.com
Email: lml@msk.com

*Attorneys for Bay Tek Entertainment, Inc.*